865 F.2d 1259
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MILLER & SMITH, INC., Plaintiff-Appellee,
v.
Samuel THOMPSON; Ruth Thompson, Defendants-Appellants.
 No. 88-3998.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1988.
Decided: Dec. 27, 1988.
 
 Roland DeWitt Hartshorn (Holst & Hartshorn, on brief), for appellants.
 Joseph Severino Luchini (Thomas R. Folk, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case below involved a declaratory judgment action by Miller & Smith, Inc., a real estate developing company, against Samuel and Ruth Thompson to ascertain its rights under a contract to buy the Thompsons' undivided one-sixth interest in a Fairfax County, Virginia, farm that Samuel had inherited. Samuel's siblings also each inherited an undivided one-sixth interest in the property. In addition, their mother claimed a possible dower interest. The contract between the Thompsons and Miller & Smith set out a price formula contingent on prospective zoning, and fixed the settlement date as August 29, 1986--twenty-one months after the November 1984 execution of the contract. Due to the resistance of one of the farm owners, zoning and partition efforts by Miller & Smith were frustrated. When the Thompsons refused to sell their interest, Miller & Smith brought this action against them to determine its rights under the contract.
 
 
 2
 The district court held that the contract had not expired, that Samuel Thompson had breached his implied duty under the contract to cooperate, and that the contract required the Thompsons to cooperate with Miller & Smith in rezoning the farm and in obtaining an amendment to the Fairfax County Master Plan. The Thompsons appeal from that judgment.
 
 
 3
 Samuel and Ruth Thompson are husband and wife who reside in California. Samuel Thompson is one of the six heirs of S. Marshall Thompson, who died intestate in 1931, seized of a farm in Fairfax County, Virginia. Samuel, therefore, inherited a one-sixth undivided interest in the farm. Miller & Smith is a Virginia corporation in the business of developing land and building homes. In 1984, Miller & Smith negotiated with the Thompson heirs to buy their undivided interests in the farm and executed agreements with all of the heirs except Alfred Thompson, Samuel's brother, who would not agree to sell his interest to Miller & Smith.
 
 
 4
 The agreement with Samuel and Ruth Thompson provided for, among other things, a $10,000 deposit by Miller & Smith; a price which was, depending on the zoning to be achieved for the property, (1) $20,000 times the number of townhouse units approved for development, (2) $225,000 per acre for each acre rezoned commercial/industrial, or (3) a minimum of $104,000 per acre regardless of zoning; and a "[s]ettlement" to be concluded twenty-one months after the execution of the contract. Miller & Smith had the obligation "to expeditiously seek a change in the [county's] master plan and to file for a rezoning of the Property to the highest and best use obtainable." The agreement was contingent upon the ratification of similar agreements between Miller & Smith and the other heirs (except Alfred Thompson) and upon the waiver of the dower interest of Lucy Thompson, the mother of the heirs.
 
 
 5
 In 1984, the farm was zoned R-1 (one dwelling unit per acre). The Fairfax County Master Plan, however, conceived development for the land that would accommodate two or three dwelling units per acre. In March 1985, after unsuccessful attempts to purchase Alfred Thompson's one-sixth interest in the farm, Miller & Smith and the other heirs initiated a partition suit in state court against Alfred. The complaint sought to force Alfred Thompson to sell his interest to Miller & Smith.
 
 
 6
 In the meantime, planning and zoning officials declined to process zoning applications until the partition efforts were finalized. Samuel at first cooperated with Miller & Smith's pursuit of the partition suit, but he later attempted to withdraw from it and thereafter refused to cooperate. Settlement efforts were initiated, but Miller & Smith refused to meet Samuel's demand for $225,000 per acre.
 
 
 7
 Finally, in October 1987, the Fairfax County Commissioner in Chancery filed his partition report recommending that the farm be divided into two parcels--one parcel for Miller & Smith and the other parcel for Samuel and Alfred together. By this time, Miller & Smith had purchased the four other one-sixth interests.
 
 
 8
 After a bench trial of the declaratory judgment action, the district court held that the "Agreement of Sale" had not expired and is still valid; that Samuel Thompson had breached his implied duty to cooperate in the performance of the agreement; that the Thompsons still had a duty under the agreement to cooperate with Miller & Smith in rezoning the farm and in having the Master Plan amended; and that Miller & Smith had not materially breached the agreement.
 
 The district court found:
 
 9
 --the Thompsons knew before they signed the agreement that a partition suit against Alfred was necessary to complete the rezoning process;
 
 
 10
 --under all the circumstances, Miller & Smith had expeditiously prosecuted the partition suit toward a conclusion;
 
 
 11
 --prior to August 1986, Samuel Thompson did not inform Miller & Smith that he would refuse to go to settlement in or after August 1986 or that he would consider the agreement terminated if Miller & Smith could not complete rezoning by August 1986;
 
 
 12
 --time was not of the essence under the agreement; Samuel Thompson never gave notice to Miller & Smith that he would terminate the agreement if Miller & Smith did not complete rezoning by August 1986 or a reasonable period thereafter;
 
 
 13
 --Samuel Thompson's refusal to participate as a plaintiff in the partition suit and his failure to cooperate in the prosecution of the suit contributed to the time required to have the matter heard and decided; and
 
 
 14
 --Samuel Thompson's agreement to have his interest allotted with Alfred Thompson's interest will have a detrimental effect on the time required for Miller & Smith to have Samuel's interest in the farm rezoned.
 
 
 15
 On appeal, the Thompsons contend that the district court erred in denying the Thompsons' demand for a jury trial; in finding that the agreement was still in effect; in finding that the Thompsons have an implied duty to cooperate; in finding that time was not of the essence in the contract; and in finding that Miller & Smith did not materially breach the agreement.
 
 
 16
 The right to a jury trial in a declaratory judgment action, of course, depends on the kind of action that the plaintiff would have brought if no declaratory judgment procedure existed. No right to a jury trial exists if the issue normally would have arisen in an equitable proceeding. 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2313 (1971 & Supp.1988). Miller & Smith's action is essentially an action for specific performance that has not yet ripened. We agree with the district court, therefore, that Miller & Smith's declaratory judgment action does not require a jury trial. See Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189 (3d Cir.1979).
 
 
 17
 The Thompsons argue that time was of the essence primarily because the contract provides for a specific settlement date. The Thompsons state that they did not waive this date--that their silence or inaction cannot amount to waiver. They also argue that Miller & Smith materially breached the agreement by not "expeditiously seek[ing] a change in the master plan and fil[ing] for rezoning of the Property to the highest and best use obtainable." They contend that Miller & Smith did not fulfill this duty within the time provided. We agree, however, with the district court's interpretation of the contract, and we do not believe its factual findings are clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564 (1985); Fed.R.Civ.P. 52(a).
 
 
 18
 We recognize, nevertheless, that, even though the district court found that time was not of the essence under the contract, Miller & Smith must complete a partition action and "expeditiously seek" a master plan amendment and a rezoning of the property within a reasonable time. See, e.g., Appalachian Power Co. v. John Stewart Walker, Inc., 201 S.E.2d 758, 767 (Va.1974) (law implies reasonable time of performance in absence of contract language). We note that our affirmance is based on the correctness of the district court's declaratory judgment issued at the conclusion of the trial. In our view, Miller & Smith is still under the duty to complete its contractual obligations within a reasonable time. That, of course, will depend upon the circumstances as they develop and the effort that Miller & Smith expends in completing a partition action and in seeking master plan and zoning changes. In our view, the district court's judgment and our affirmance of it should not preclude a future declaratory judgment or a breach of contract action by the Thompsons should Miller & Smith fail to meet its contract obligations.
 
 
 19
 In view of the above, the judgment of the district court is affirmed.
 
 
 20
 AFFIRMED.